UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAKYT SOOROV, A-244-074-140, | No.  1:26-cv-1332 DC AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN OF MESA VERDE ICE PROCESSING CENTER, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.      Factual Background

Petitioner is a native and citizen of Russia who entered the United States on May 9, 2023, and made a request for asylum.  ECF No. at 5 at 2, 7; ECF No. 8 at 10, 16.  That same day he was issued a Notice to Appear and charged as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1]  ECF No. 5 at 7; ECF No. 8 at 13.  He was then paroled into the United States for one year.  ECF No. 5 at 7; ECF No. 8 at 16.  Petitioner has no criminal history, and while on parole, he complied with the conditions of his release, appeared for his immigration proceedings, and filed an application

---

[1]  For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

1

for asylum and an application for withholding of removal.  ECF No. 5 at 7-8.  Petitioner's parole naturally expired on May 7, 2024, after which the government did not seek to detain him, and he continued to reside in the United States until his detention on August 7, 2025.[2]  Id. at 8.  During that time he continued to comply with reporting requirements, appear for immigration proceedings, and pursue his asylum claim.  Id.

On August 7, 2025, petitioner was a passenger in a vehicle involved in a traffic accident.  Id. at 9.  The local police contacted ICE and agents arrived at the scene and ultimately arrested petitioner based on his immigration status.  ECF No. 8 at 16.  Prior to his detention, petitioner was not provided written notice of the reason for his detention, respondents did not assess whether he was a danger to the community or flight risk, and petitioner did not receive a hearing.  ECF No. 5 at 9.

II.    Procedural History

On February 17, 2026, petitioner filed his first amended petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security (DHS).  ECF No. 1.  The petition asserts that petitioner's arrest and re-detention without a hearing violates the Immigration and Nationality Act (INA) and due process.  Id. at 11-15.  Specifically, petitioner argues that his re-detention violates the INA because he is subject to § 1226(a), not § 1225(b)(2).  Id. at 11-12.  He further argues that his re-detention without a bond hearing to determine whether he is a safety or flight risk violates due process.  Id. at 12-15.

In opposing the petition, respondents acknowledge that "this court has previously applied § 1226(a) rather than § 1225(b) in similar circumstances."  ECF No. 8 at 3-4 (citing Labrador-Prato v. Noem, 815 F. Supp. 3d 1113, 1120 (E.D. Cal. 2025); Selis Tinoco v. Noem, No. 1:25-cv-1762 DC JDP, __ F. Supp. 3d __, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025)).  However, they argue that this case is distinguishable because petitioner is detained under § 1225(b)(1), unlike the petitioners in Labrador-Prato and Selis Tinoco, who were detained under § 1225(b)(2)(A).  Id. at

---

[2]  Petitioner states that he was detained August 11, 2025 (ECF No. 5 at 8), while respondents submit records indicating he was detained on August 7, 2025 (ECF No. 8 at 15-17).  The difference in date is immaterial to resolution of the petition.

2

4.  Respondents further argue that petitioner's rights have not been violated because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and such detention is constitutional; there is no evidence petitioner's detention is indefinite or potentially permanent; and as a non-citizen, petitioner has only those rights provided by statute.  Id. at 4-7.

### III.    Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.    Discussion

#### A.    Statutory Framework

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)."  8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."  Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released."  Id. at 300.  Accordingly, there is

3

no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97. By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288). It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

B.    Due Process

The parties are in agreement that petitioner was initially paroled under § 1182(d)(5). ECF No. 5 at 6; ECF No. 8 at 2 n.3. However, petitioner asserts that upon the natural expiration of his parole, he was no longer an arriving alien and his detention is therefore governed by § 1226(a). ECF No. 5 at 6. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention," Jennings, 583 U.S. at 306 (citations omitted), whereas parole under § 1182(d)(5)(A) is limited to "urgent humanitarian reasons or significant public benefit," id. at 288 (citations omitted). However, it is unnecessary for the undersigned to resolve which statute governed petitioner's continued release after his initial parole expired because, as outlined below, petitioner was entitled to a pre-deprivation bond hearing prior to being detained regardless of the specific statutory provision under which he had been paroled.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

4

Zadvydas, 533 U.S. at 690.

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, __ F. Supp. 3d __, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections." D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (collecting cases);[3] Flores v. Chestnut, No. 1:26-cv-0078 TLN CSK, 2026 WL 504650, at *4 (E.D. Cal. Feb. 24, 2026) (court did not need to determine whether petitioner was detained under § 1225 or § 1226 because she "had a protected liberty interest in her release, regardless of which detention statute applies." (collecting cases)).

> Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered.

Cesar Luis v. Warden, No. 1:26-cv-1823 DC SCR, 2026 WL 700713, at *1 (E.D. Cal. March 12, 2026) (collecting cases). By initially releasing petitioner on parole, the government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that there was a change in this assessment. By permitting petitioner to remain at liberty for over two years, the government enabled petitioner to develop a protected liberty interest in remaining out of custody.

////

---

[3] The court notes that respondents in D.L.C. similarly attempted to distinguish the case by arguing that the petitioner was detained under § 1225(b)(1). 2026 WL 25511, at *2 (noting respondents argued case was distinguishable from Labrador-Prato and Selis Tinoco because petitioner was mandatorily detained under § 1225(b)(1)).

5

For these reasons, the undersigned finds that petitioner has established a liberty interest in his continued release.  Having determined that a liberty interest exists, the court must now examine what process is due.  See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention.  Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Petitioner was out of custody for over two years prior to his detention, during which time he settled in Chicago, Illinois and became gainfully employed.  ECF No. 5 at 7.  He asserts, and respondents do not dispute, that he has no criminal record, he has complied with all conditions of his release, and he has appeared for all his immigration proceedings.  Id. at 8.  He further asserts, and respondents do not contest, that he was found suitable for release when he was initially paroled into the United States and that there has been no change in circumstances that would justify his detention.  Id. at 9.  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor.  Considering that petitioner has been detained for over eight months without being provided a bond hearing, the risk of erroneous deprivation is high.  See A.E. v. Andrews, No. 25-cv-0107

6

KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  Respondents do not argue that petitioner is a flight risk or danger to public safety, and no neutral arbiter has made such a determination.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty and respondents were required to provide him with a pre-deprivation hearing prior to revoking his parole.  Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns," warranting petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding no urgency where ICE waited over six weeks after petitioner's arrest by local law enforcement to arrest and re-detain petitioner).

The court finds relief is appropriate on petitioner's claim that his detention without a pre-deprivation hearing to determine wither he is a flight risk or danger to the community violates his procedural due process rights.  The court therefore declines to address petitioner's claim that his detention violates the INA, as it seeks the same or similar relief (i.e., petitioner's immediate release).

////

////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition for writ of habeas corpus (ECF No. 5) be GRANTED, as follows:

    a. Respondents shall IMMEDIATELY RELEASE petitioner Bakyt Soorov, A-244-047-140, with the same conditions he was subject to immediately prior to his detention on August 7, 2025.  At the time of release, respondents must return all of petitioner's documents and possessions.

    b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

    c. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' notice to petitioner and hold a pre-deprivation bond hearing before a neutral arbiter, at which petitioner's eligibility for bond must be considered.

    d. The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his August 7, 2025 detention.

3. The Clerk of the Court be directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local

Rule 304(b).  Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **three** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 1, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE